and Howard. Ms. Rothman. Yes. Good morning, Your Honor. May it please the Court. My name is Alexandra Rothman, and I represent the United States on this appeal, as I did at both trials below. This Court should reverse the District Court's orders, granting in part Michael White and Christopher Howard's motions for judgment of acquittal, affirm the judgment of conviction, and remand for resentencing. Two separate juries heard the testimony of multiple cooperating witnesses, saw dozens of social media messages, and learned of countless acts of violence committed in and around the Millbrook houses between MDG and YG members and their rivals. These juries correctly returned guilty verdicts on all counts. The District Court overturned three of those counts, one with respect to White and two with respect to Howard, and that was error. With the Court's permission, I'd like to focus my opening remarks on the government's appeal. First, as to White, the District Court erred by finding that MDG was not an enterprise. At trial, there was more than sufficient evidence for a rational juror to conclude that MDG constituted a racketeering enterprise. MDG had a defined territory of up-the-block Millbrook, MDG members shared guns, they had tattoos, they sold drugs together, and they committed shootings together and against their main rival, Killbrook. A properly instructed jury found this evidence sufficient, and in overturning this verdict, the District Court misapplied the applicable law, misapplied the Rule 29 standard, and either ignored or improperly minimized the significance of this evidence. The evidence on the enterprise issue went far beyond what would have been merely sufficient. Yes, Your Honor. The evidence at this trial was more than sufficient in light of this Court's precedent as to what is required, and in light of the Supreme Court precedent under Boyle as to what is required. As the Court is aware, there is no requirement for overly formalistic positions and hierarchy, although we would submit that MDG had that, Your Honor, and that was evidenced by the testimony at trial. And so the District Court, in vacating the jury's verdict here, disregarded what this Court has said is necessary to uphold a racketeering enterprise. Similarly, Your Honor, as to Howard, the District Court erred by finding that the vicar motive element was not satisfied with respect to Howard's shooting of Scrapp. Again, at trial, there was more than juror to find that advancing or maintaining Howard's position in MDG was among his motives for shooting Scrapp. The shooting was in retaliation for the assault of Howard by Killbrook member Scrapp that took place during a gang fight between other MDG and Killbrook members. After the assault, Howard sent messages on social media to another MDG member, Devin White, stating that he wanted to retaliate against one of these people, meaning he didn't just want Scrapp, he wanted anyone from down the block. And I'll note that there are several messages on Facebook, and when he talks about his desire to retaliate against down-the-block people, not only due to his own assault, but also when fellow MDG members, or the girlfriend of a fellow MDG member, are attacked or even killed by Killbrook members. But you don't deny that he had a very specific personal interest in going after this one individual. Your Honor, there was undoubtedly a personal component of what the defendant and what Howard did here. But this court has been clear that there can be personal aspects of this, it can be one aspect of it, as long as maintaining or increasing his position in the case is also part of that. And I would point the court here to its precedents in Farmer, in Sierra, in Burden, cases that recognize that there can be a mixed motive of sorts in evaluating the motive behind these acts of violence. And so while the defendant... Is it possible that it could become totally personal? I mean, or the fact that it arose from gang rivalry means it's always going to be connected to the gang rivalry. Like, if it were a different record, would you concede that, well, you know, he didn't go after other people, he was obsessed with one target, and so then maybe it becomes personal and it's not really about advancing his position in the gang. Your Honor, I'm not sure that the court has to answer this question, that question here, in light of what we know about the way in which Howard retaliated and engaged in this act of violence. He didn't go alone, he took a fellow MBG member with him, and that's one fact that courts look to, that this court has looked to, in evaluating whether this properly falls within the motive requirement, the fifth element of a violent crime in aid of racketeering. And so you don't just have statements at the time about the defendant wanting to down the block individuals, but you see him three years later also acting with a fellow MBG member to commit this crime. So while perhaps it is possible on some set of facts that something that started as a gang rivalry could turn personal, those are not the facts here. And most importantly, this court's analysis and conclusions, but to ask if a rational juror could have found that maintaining or increasing his position in MBG was among the motives that he had in engaging in this crime. The jury was instructed that it doesn't need to be a sole purpose, the jury was instructed properly on what it needed to find, the jury was allowed to choose between competing inferences, and it did that in finding the And that's because the evidence that we put forth at trial of the MBG, of what was expected of MBG members in connection with this rivalry with Kilbrook. The testimony of the two cooperating witnesses, Joey Colon and Andy Seda, about the countless acts of violence committed by MBG against Kilbrook members, in a sense, a ping-pong match of violence back and forth speaks to the expectation of MBG members as to what you do when you are attacked. And that was the testimony that this jury heard before finding that Howard was guilty on this count. In other words, retaliation is essential, or thought to be essential, to maintaining street creds, which is power and standing in the game. Isn't that the fact? Yes, Your Honor. That's precisely correct. And there was evidence for that effect, right? Yes, Your Honor. There was testimony from Joey Colon to that effect. There was testimony from MBG member Lele is shot. He needs to get action and wants to retaliate. After Bolivia Beth, the girlfriend of Joey Colon, is killed, no more talk. We need to handle our shit. After Joey Colon learns that his friend and MBG associate James Robinson is hit in the face with a cane, he goes and gets his gun and shoots at another Kilbrook member. After Joey Colon's wants to kill Kareem Davis. And the list could go on and on. The way that MBG maintains its status in Melbourne. So that evidence suggests that members of MBG gain status generally by engaging in acts of violence. It's not the same as the evidence that the government introduced with respect to White, where the shooting specifically led to him getting a higher status in the gang, right? Big gun status or whatever that was. And that he had that specific purpose. I guess you're saying that you didn't need to show that for White, that it would be enough to show that the gang generally maintains its status, or that individuals within the gang increase their status by engaging in violence. Is that right? Howard or White? Well, I'm saying that there was the specific evidence with respect to White. But not as much with respect to Howard. Does that mean that with respect to White, you just had extra evidence that wasn't even necessary to establish the violation? Is that right? Your Honor, if I understand your question, let me frame it this way. As for both cases here, to both trials, there was more than sufficient evidence to sustain the jury's verdict. As to White, yes, there was testimony about the position that White had in connection with the shootings that he did, both the shootings in 2010 and that horrific subway station shooting in 2012, how he gained the position of a big gun in the enterprise. As to Howard, there was no testimony that he became a big gun after committing the shooting in 2014. But I don't think that that is any less sufficient, particularly because what the question is really here is not if he was successful in gaining a new position, but what his intentions were in doing so. And I think the court can look to Farmer for that point, where the defendant accidentally shoots a 14-year-old kid thinking he's a Crip as part of this broader blood Crip rivalry. And the question, I think he argued, it couldn't have increased his status because no one would think that killing a 14-year-old accidentally would do that. But the court correctly noted that it's not the successfulness of his actions, but what his intention in doing so. And so I think you have enough... So, excuse me, I was just going to say, you're saying that there's enough evidence with respect to Howard, and much more than enough evidence with respect to White. I mean, is that the position? Yes. In a sense, it doesn't... We're comparing two different cases, and it's apples and bananas, if not apples and oranges. But go ahead. I think that's a fair reading or interpretation of the government's argument here, Your Honor, in that both of these records independently were sufficient to sustain, or more than sustain, the jury's verdict on each count of conviction. And I don't think the question is, well, if there was a little less in Howard than there was in White, then Howard clearly wasn't sufficient. I actually think if you look at the district court's opinion, and we make this point in our brief, what I think the district court was doing in vacating the MDG Enterprise conviction was holding it up to the YGs and saying, well, there's a little more in the YGs of those traditional, structural things, so MDG clearly can't be good enough. And that's definitely not this court's law, and that's definitely not the correct way to approach the government's evidence at trial, particularly on a sufficiency review, where, again, the question is, could any rational juror found that this enterprise existed? And again, for the reasons that forth in our brief, and as I've explained today, we think the evidence here was overwhelming. Okay. Thank you, Ms. Rothman. We'll hear from you again on rebuttal. Ms. Lateef for White. Thank you, Your Honor. May it please the court, my name is Elizabeth Lateef, and I represent the defendant, Michael White. The district court correctly found there was insufficient evidence to convict Mr. White of the MDG racketeering conspiracy charged in count one. We submit, Your Honor, that the government did not prove the existence of this enterprise, nor that he knowingly agreed to participate in it. Congress intended enterprise to be more than just an unconnected group of people who may have committed crime, and the government failed to prove such here. For similar reasons, the court should have found that the government failed to prove the existence of the YGZ conspiracy, and that White agreed to enter it. They also failed to prove he was involved. Finally, in terms of sort of an overview, the district court should have thrown out count 11 as time barred, because the addition of that October 12 shooting, October 28, 2012 shooting as an underlying violent crime to the 924C charge required White to litigate additional elements that were not present before. Specifically, whether that alleged shooting was a violent crime under 924C. That wasn't something he had to litigate before, it did become something he had to litigate after the superseding indictment. In terms of whether MDG was a proficient enterprise, Your Honors, a racketeering conspiracy is more than just a group of people who associate together. It's more than just a gang. It's a group that commits crimes and furtherance of some shared objectives, as financial ties, coordination of activities, and commonality of interest. None of that was present here as to MDG. Rather, as in Boyle, they were acting independently and without coordination. There was no enterprise that found the group. These were just individuals. As the district court found, the evidence failed to commit that organized violence was a purpose of or was committed on behalf of MDG. The government's argument that the sheer number of shootings committed by MDG against Kilbrook supports the inference that there was some enterprise is circular and doesn't find support in the case law. As the Supreme Court held in Turquette, the enterprise is not the pattern of racketeering activity. It's an entity separate and apart from that activity. You argue in your brief that MDG didn't have a hierarchy, induction requirements or rituals, decision-making procedure, rules or roles, that kind of thing the Supreme Court told us in Boyle isn't required to establish a RICO enterprise, right? We just need to find that there's an ongoing organization where the associates function as a continuing unit, right? Correct, Your Honor. I mean, we don't need that formal structure to be an enterprise. But here, there wasn't that formal structure, nor was there some economic motive. There wasn't anything that was present in Boyle. Thank you. The definition of enterprise in the statute is simply, insofar as it's relevant here, any group of individuals associated in fact. Now, there's no question that MDG was that, right? Your Honor, the cases have fleshed that out, and it's not just an association. Although that is the sort of broad definition the courts have held, it has to be a group that has the intent to serve a common goal. It can't simply just be a group of people who associated together and committed unconnected crime. I'm not sure I agree with your statement at all, I must say. You get to the substantive offenses when you get to the requirement that a person associated with an enterprise conspires or conducts the affairs of the enterprise through a pattern of racketeering. But the enterprise doesn't have to be, I don't believe, what you're suggesting. Your Honor, I believe the cases say that this group has to be coordinated. They have to be acting together to pursue a common goal. I think necessarily have to have any particular structure or hierarchy, but it does have to have a continuity of purpose, and that simply wasn't present here. Although the government argues that MDG had the common purpose to protect the gang and maintain its superiority over Kilbrook, a review of those crimes reveals they're unconnected to MDG. Rather, they were personal beasts, as the evidence suggested. This fight between Cullen and Giovanni was about a one-on-one fight that he had, where someone called the police. Giovanni, in fact, lived in MDG territory, further showing that this was a personal and not gang-related fight. There was just no evidence of any coordination about Cullen's shooting. But personal and gang-related are not mutually exclusive categories, are they? Correct. But here, there wasn't sufficient evidence to show that it was gang-related. The evidence all suggested it was personal. That same principle is apparent as for Mr. White. There's no evidence that these shootings would have been committed for other than personal reasons. The January 25, 2010 shooting of Rodriguez was precipitated by threats that Rodriguez communicated to White through SEDA. They had nothing to do with gang membership. So I suppose you would disagree with the circuit's decision in Santiago-Ortiz? If you could illuminate me onto the decision, Your Honor. Sure. There was a dispute between somebody in a narcotics operation and some guy over a woman, if I remember correctly, in a bar that resulted in the narcotics guy having his face slashed. A year later or thereabouts, the brother, who was also in the narcotics group, organized the murder of the slasher. And the issue on appeal was whether the evidence was sufficient to sustain a conviction for a murder in aid of a narcotics operation, quite analogous to what we have here. It may, in fact, even have been a RICO case, but I don't remember. And the argument to the jury below had been it was a personal beef. And we affirmed the conviction because the jury was properly instructed that as long as narcotics operation or the standing of the individual in the narcotics operation who ordered the murder was a motive, the fact that there may also have been a personal motive was beside the point. It didn't go to the issue of the sufficiency of the evidence. I don't agree with that decision, Your Honor. I think that was decided correctly. There were two motives, a personal motive and a motive to increase one standing in the conspiracy. That's not present here. There wasn't evidence that white shootings were to gain status in NBG. These were entirely personal shootings. These were entirely personal. There wasn't both. Oh, so it had nothing to do with the misbehavior that was going on more generally involving others.  No, in the case of white, in this case. Yes, Your Honor. We believe the evidence suggests these were entirely personal disputes. Okay, Ms. LaPeef, thank you very much. You've reserved two minutes for a cuddle. We'll hear more from court counsel for... Thank you, Your Honor. ...for Howard, Mr. Diaz. Thank you, Your Honors. May it please the court. My name is John Diaz and I represent Christopher Howard. During the time allotted, I'm going to be arguing the following. Firstly, that the district court did not err in granting Apelli Howard's motion for judgment on count six of the indictment, where the evidence presented at trial was insufficient for a reasonable juror to conclude that Apelli Howard's conduct was done in furtherance of NBG racketeering conspiracy, nor to further his own position in NBG. Secondly, that the district court did not err in granting Apelli's motion for acquittal on count 12, when it found that the evidence did not show that Apelli used a firearm in relation to the RICO conspiracy, nor possessed it in furtherance of that conspiracy. And finally, that the court should also have dismissed count one of the indictments, the racketeering conspiracy, because NBG does not meet the element of a RICO enterprise. Firstly, Your Honor, during the trial, the government failed to present evidence that members of NBG or that NBG as a whole was in support or assisted Apelli Howard in retaliation after he had been the victim of an assault, not just on one occasion, but on prior occasions. Nor was there any evidence presented by the government that Apelli sought to elevate his status in NBG, or that his status was in fact elevated after the shooting. The evidence at this trial showed that Mr. Howard had been in this gang for approximately 10 years. And mostly that evidence comes from his Facebook postings and messages that he posted on there. However, the actual evidence shows that during that time that he was a member of NBG prior to 2014, and the government does not dispute this fact, that Christopher Howard was not engaged actually in the activities of NBG. Christopher Howard was not involved in their narcotics trade. Christopher Howard was not involved despite, you know, bluster and messages. He actually never participated in any act of violence, in retaliation, or for any matter against members of Killbrook. He had been the victim of a robbery. He had been assaulted. He had his clothing burned and a video placed on social media. Mr. Howard never retaliated for that fact. And after he had his jaw broken in 2011, despite his pleas to other members of NBG to retaliate on his behalf, no one heeded his call. There is no evidence that not only Mr. Howard engaged in any acts of retaliation, but that other members were also not willing to do so. And as a result, there's no evidence here of what was expected by other members of NBG and what one member would expect to do on behalf of another. There was evidence that was introduced. There was testimony from CETA and Cologne, right, that one could obtain status at NBG by engaging in shootings. That's the one that Howard engaged in, wasn't there? They're absolutely correct, Your Honor. There was evidence by the government's cooperating witnesses on how one can achieve status in the gang, and specifically how they achieved status within the gang. And all those facts are absent under Mr. Howard. Mr. Howard... Well, there was evidence that Mr. Howard... I mean, you just said that Mr. Howard had a lot... Bluster and Facebook posts and so on. And so he was a participant in the gang, even though you're saying he didn't engage in all of the activities that maybe one would have expected. But I'm just asking, why would it be irrational for a jury to look at the evidence that says one could obtain status in NBG by engaging in shootings, and Mr. Howard engages in bluster about being a member of the gang that engages in precisely the conduct that the evidence showed would increase one's status in the gang? Would it be irrational for a jury to conclude that he did it to increase his status in the gang? It would not, Your Honor. And I completely agree with the court's statement. However, I think that there is a differentiation in the fact of what occurred after the shooting. Mr. Howard never... And this also goes to the case of Farmer that was cited to by the government, and that we also cited in our brief. There was no evidence or any inference that Howard bragged about the shooting afterwards, told any other member. I mean, just as a logical matter, in order for one to gain status, other individuals have to know about your... He committed the shooting with another NBG member, didn't he? So obviously, other members knew about it. But again, Your Honor, there was no dissemination of that fact afterwards. He didn't discuss it. He didn't inform other members of it. He did nothing in order to disseminate the information, in order for other members to conclude that he had done that shooting. And absent that fact, absent his own personal behavior and unwillingness to discuss the shooting, inform other members of the shooting, take credit for the shooting, or use the shooting to intimidate other individuals, I think are facts that the court considered here when making a determination that there was insufficient evidence presented by the government that Howard did anything to try to enhance his position in the gang. The way one would enhance your position, again, using an example from Farmer, would be by exploiting the acts that you've done, informing other people of that. And again, that did not occur here. And when taking that together with the fact that this happened approximately several years, three years after he was initially assaulted, again, evidence is that this was a personal dispute that he had with Howard. And when compiled with the other fact that he did not take any steps to retaliate against any other individuals or against prior assaults that he himself was the victim of, and concentrated his retaliation strictly on Samuel, again, the only logical conclusion that can be drawn here is that this was personal in nature. And just to add to that, an additional fact is that, according to the government's own witnesses who testified that in 2014, during the period of time that this shooting occurred, the members of MBG, along with members of Killbrook, were actively engaging in decreasing violence in the neighborhood. And it was for their own personal business reasons as they concluded that the violence increased police presence in the their profits from drug dealing. And as a result of that, the timing of this shooting is also evidence of how this not only not helped elevate his position, but quite frankly, helped to decrease his position. As Mendez and Cologne testified, members of MBG were unhappy with Howard after this shooting occurred. People... Okay. Okay, Mr. Diaz, thank you. But you've gone a little bit over time. So if there aren't... I'm sorry, Your Honor. We reserve time for rebuttal. So we're going to hear from you again. But before that, Ms. Rothman on rebuttal. Yes, Your Honor. Thank you. Very briefly, in response to the argument from White's counsel that the MBG shootings were personal and not gang related, I think the court only needs to look to the defining characteristic of each of his four victims, Jose Rodriguez, Rommel Jackson, Cassine Cherry, and Quentin Stark. What they all shared in common was that they were Killbrook members. And as the court knows, there was a long standing rivalry between MBG and Killbrook. But I think that is sort of a response to the suggestion of personal motivation, an individual shooting as raised by counsel. And then on Howard, I think what I would just do is point the court to a few additional points in the record that further support the government's position, which the jury found that the shooting was in part motivated by his desire to maintain or increase his position in the gang. I do want to correct the claim that this shooting was the only thing that Howard did in connection with fellow MBG members. The government's cooperating witness testified at trial to another incident in 2007 when he, along with Howard and several other MBG members, went down to Mitchell's, a rival housing project, with the intention of shooting. And Howard was present for that. And that's on page 483 of the Howard transcript. And then, of course, the court is aware of the countless social media messages from 2011 and some in 2014 as well, in which the defendant speaks to his membership and pride in MBG. And so for all of those reasons, unless there are any questions, we would respectfully request that the court reverse the district court's orders, affirm the judgment of conviction and remand for resentencing. Thank you. Thank you very much. If there are no other questions, we'll turn to Ms. Lateef on rebuttal. Thank you, Your Honor. Just a couple of points. I wanted to respond to the government's argument that White got big gun status within the YGZ in response to the October 28, 2012 shooting. However, according to Colon's testimony, White already had big gun status in October 2010 when Colon was released from jail. Therefore, there was no evidence that the shooting, the 2012 shooting, either maintained or enhanced his position within the YGZ. But it was some evidence, right? Didn't CETA testify that he attained big gun status after the shooting? Yes, Your Honor. But again, I don't know that that was sufficient to indicate that. I'm sorry. Would it have been irrational for a jury to believe CETA's testimony that he attained big gun status? I think it would, Your Honor, in light of Colon's testimony, who was testified as to much more than the other witness did and was much more involved in the group. So I don't think it was sufficient to support count four. Further, Your Honor, just going to the government's remarks that we only need to look at the defining characteristics of his victims, and they were all Kill Book members. Your Honor, I think the court got it right that each of the shootings in 2010 were committed for reasons other than White's participation in MDG. It doesn't matter that the victims were Kill Book members. That's not controlling. What's controlling is why he committed the offenses. And as the district court found, none of these offenses were committed to increase his position in MDG. They were all personal disputes. Again, the January 25, 2010 shooting was a personal dispute, as evidenced by White's letter. The January 31, 2010 shooting at the wedding shower was, again, related to White's dispute with Rodriguez as opposed to gang membership. And again, the 2012 shooting wasn't even alleged to be a furtherance of the MDG. It was alleged to be a furtherance of the YGC. So going back to the district court ruling on the MDG conspiracy, there was not sufficient evidence to establish that any of these shootings were done to increase or maintain his status in MDG, and the district court got it right here. Thank you, Your Honor. Your Honors. Thank you very much. Mr. Diaz. Thank you, Judge. And very briefly, just in rebuttal to the government's point, in the course of this trial, which I think went on for four or five days, the government presented 15 witnesses, countless pieces of evidence, including testimony of homicides that occurred during this period of time, numerous shootings. And the one fact the government can point to is a 2007 incident where Mr. Howard was present at a location where a shooting did not happen. And again, I think that in the totality of the circumstances... Your adversary mentions, excuse me, your adversary also mentions, and you can tell me why it's irrelevant, but mentions Facebook. No, absolutely, Judge. But again, in looking at the action, and the Facebook posts are the reason that he's convicted of the racketeering charge. I think that the Facebook posts show that he claimed allegiance to MDG, but his actual actions, Judge, where all these things were going on around him, he did not participate in any of these criminal acts, including the narcotics conspiracy, even when he himself was the victim of assault and robbery by members of Killbrook. And as a result of that, I submit to the court that it cannot credibly be argued that it was expected of him to retaliate as a result of the shooting, and that the shooting actually benefited him, or increased his status in this organization. And I'll rest on my brief, unless anyone has any additional questions. Okay. Does anyone have any further questions? If not, then thank you very much, Mr. Diaz. The case is submitted. The final case for today will be taken on submission, and therefore we are adjourned.